Argued and submitted October 27, 1993, affirmed on appeal and on cross-appeal September 7, 1994, petition for review denied January 24, 1995 (320 Or 508)

# STATE OF OREGON,
*Respondent - Cross-Appellant,*

*v.*

# STEPHEN PHILLIP GAYNOR,
*Appellant - Cross-Respondent.*

## (91CR0812FE; CA A74473)

880 P2d 947

David E. Groom, Deputy Public Defender, argued the cause for appellant - cross-respondent. With him on the brief was Sally L. Avera, Public Defender.

Jonathan H. Fussner, Assistant Attorney General, argued the cause for respondent - cross-appellant. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Deits, Presiding Judge, and Riggs and Haselton,* Judges.

DEITS, P. J.

---

* Haselton, J., *vice* Durham, J.

## DEITS, P. J.

Defendant appeals the denial of his motion for a judgment of acquittal on the charge of intentional murder. ORS 163.115(1)(a). In the alternative, he seeks a remand for resentencing. On cross-appeal, the state argues that the trial court should have imposed a life term of post-prison supervision, rather than a 36-month term. We affirm on appeal and on cross-appeal.

■■ Defendant contends that because the state failed to prove that he intended to cause the death of Cross, the trial court erred in denying his motion for a judgment of acquittal on the charge of murder. ORS 163.115(1)(a). In ruling on the sufficiency of the evidence following a conviction, we view the evidence in the light most favorable to the state to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[1] We treat any conflicts in the evidence as if they had been decided in the state's favor. *State v. King*, 307 Or 332, 339, 768 P2d 391 (1989). We summarize the evidence with those principles in mind.

Defendant and his wife (Gaynor) separated in July, 1990, after eight years of marriage. The marriage was dissolved in January, 1991, and Gaynor was awarded custody of their only child, an eight-year-old daughter. Gaynor started dating Cross approximately two weeks before his death. On the evening of March 31, 1991, Cross visited Gaynor at her apartment. Cross drank two beers while he was there and got up to leave at about 10 p.m. Soon after Cross walked outside, Gaynor heard loud banging or hitting noises. She walked out to where Cross's truck was parked and saw Cross lying on his stomach with an injury to the back of his head. Defendant then grabbed Gaynor with one hand, held a two-foot long two-by-four piece of wood in the other, and said, "Just talk to me." Gaynor got away from defendant and called 911 and her mother. She then looked out from her deck to where Cross's truck was parked and saw that Cross and defendant were gone. She heard defendant's truck driving away. When the

---

[1] Where, as here, a defendant moved for judgment of acquittal at the end of the state's case, we consider all the evidence and will not reverse the trial court if the record as a whole contains sufficient evidence to support a conviction. *State v. Lamphere*, 233 Or 330, 332, 378 P2d 706 (1963).

police arrived, Gaynor told the officer that defendant had hit Cross with a two-by-four, had killed him and had taken him away from the scene.

Defendant arrived for work at Roseburg Forest Products at approximately 11:00 that night. At about 11:30 p.m., Officer Johnson went to Roseburg Forest Products, where he saw blood spots on defendant's truck and noticed that the bed of the pickup had just been washed out. Johnson and another officer then arrested defendant. The officers observed that defendant had red spots on his jeans. In response to questions, defendant stated that he had not been to Gaynor's apartment since earlier in the afternoon. Defendant was taken to the Douglas County jail where he was placed in isolation, at his request. When an officer returned to his cell, defendant had removed his clothing and was washing it in the toilet.

Cross's body was discovered the next day in a ditch not far from Roseburg Forest Products.[2] The pathologist who examined the body identified at least three blows to the head causing numerous injuries. He also identified numerous injuries to the body, some of which might have occurred after death. The pathologist determined that the cause of death was head trauma that caused multiple skull fractures and subdural hemorrhage.

Witnesses testified that defendant had had several encounters with Gaynor and Cross, both separately and together. On March 24, 1991, defendant was driving with his daughter when he saw Gaynor's car ahead of his. Defendant and Gaynor pulled over to the side of the road, and Gaynor told defendant that she was going "four-wheeling" with Cross. After a brief discussion, she told defendant that she would go home, and both vehicles got back on the road, with Gaynor following defendant. When Gaynor turned off to a side road, defendant turned around and followed her to Cross's house, where Cross was standing outside waiting for her. After some yelling, Gaynor told defendant that she was going home. Later that afternoon, when defendant returned

---

[2] A police officer testified that, driving the speed limit, it would take a total of 17 minutes to drive from Gaynor's apartment to the ditch where the body was found and then to Roseburg Forest Products.

his daughter to Gaynor's apartment, he refused to leave and questioned Gaynor persistently about her relationship with Cross. On March 26, defendant went to Cross's house and told him that he and Gaynor were still married and were "trying to work it out." On March 31, after defendant brought his daughter back to Gaynor's apartment after a visitation, defendant got into Gaynor's car with her and the child and refused to leave. He again questioned Gaynor about her relationship with Cross.

At trial, defendant testified that he arrived at Gaynor's apartment at a little after 10 p.m. on March 31, 1991. He saw Cross's truck and Gaynor's car parked in the parking lot, which was full. He parked his own truck on the road just past the lot and then sat on the front of Gaynor's car so that he could see when Cross left. While he waited, he put nails under the tires of Cross's and Gaynor's vehicles. He soon saw Cross walk towards him. According to defendant, the two exchanged words, and Cross hit defendant in the mouth. After some grabbing and punching, Cross took a board out of the back of his truck and swung it at defendant. Defendant ducked, grabbed Cross and swung him toward the back of the pickup. Cross hit his head and fell on the ground in a sitting position. Defendant then grabbed the board from Cross and struck him with it on the top of his head.

Gaynor came out of her apartment, and they spoke briefly before she pulled away. Defendant testified that he threw the board into Cross's truck and started to drive away in his own truck. He then thought that he should help Cross, so he picked Cross up and put him in the back of his (defendant's) truck. He drove some distance before he stopped and sat Cross by the side of the road. Defendant stated that "[c]onsidering what had happened, I felt that I did not owe him anything." He then drove to work.

Defendant waived his right to a jury trial. At the close of the state's case-in-chief, defendant moved for a judgment of acquittal on the charge of murder on the ground that the state failed to prove that defendant acted with the intent to cause Cross's death. The motion was denied. The court convicted defendant of intentional murder, ORS 163.115-(1)(a), and sentenced him to a 10-year term under *former* ORS 163.115(3)(b) (renumbered ORS 163.115(4)(b) in 1993),

a consecutive five-year term under *former* ORS 163.115(3)(c) (renumbered ORS 163.115(4)(c) in 1993), and a 36-month term of post-prison supervision.

ORS 163.115(1)(a) provides:

"(1) Except as provided in ORS 163.118 [manslaughter in the first degree] and ORS 163.125 [manslaughter in the second degree], criminal homicide constitutes murder:

"(a) When it is committed intentionally,[3] except that it is an affirmative defense that, at the time of the homicide, the defendant was under the influence of an extreme emotional disturbance[.]"

ORS 163.118(1) provides:

"(1) Criminal homicide constitutes manslaughter in the first degree when:

"(a) It is committed recklessly under circumstances manifesting extreme indifference to the value of human life; or,

"(b) It is committed *intentionally* by a defendant under the influence of extreme emotional disturbance as provided in ORS 163.135. The fact that the homicide was committed under the influence of extreme emotional disturbance constitutes a mitigating circumstance reducing the homicide which would otherwise be murder to manslaughter in the first degree and need not be proved in any prosecution." (Emphasis supplied.)

In support of defendant's motion for a judgment of acquittal, defense counsel argued at trial that the state failed to prove that defendant acted intentionally to cause the death of Cross. Counsel argued that, at most, the state proved that defendant acted recklessly and, thus, the state could only proceed on the lesser included offense of manslaughter in the first degree.[4] ORS 163.118(1)(a). On appeal, defendant

---

[3] ORS 161.085(7) provides:

" 'Intentionally' or 'with intent,' when used with respect to a result or to conduct described by a statute defining an offense, means that a person acts with a conscious objective to cause the result or to engage in the conduct so described."

[4] Defense counsel argued at trial:

"The evidence taken in a light most favorable to the state established no more than that [defendant] acted recklessly as that is defined in [ORS] 161.085, subsection (9) * * *. The risk must be of such nature and degree that disregard

argues that because the state failed to prove the element of intent, the court erred in denying his motion for judgment of acquittal. However, he further argues that the trial court should have granted his motion on the ground that he was suffering from an extreme emotional disturbance (EED):

> *"Defendant acknowledges that he maybe [sic] guilty of manslaughter [in the first degree], having been subject to an extreme emotional disturbance at the time of the incident.* Defendant had been suffering from confusion and depression for many months, perhaps even years, prior to this incident as a result of his separation and divorce. This event was something which he simply could not understand. Obviously, [Gaynor's] dating Robert Cross was too much for defendant to handle. His reaction to Cross was based on this extreme emotional disturbance. Defendant did not intend to cause the death of Cross; that he did so was no more than an accident. *Based on this, the court should have entered a judgment of acquittal to the count of murder, and trial should have proceeded upon the lesser included crime of manslaughter in the first degree."* (Emphasis supplied.)

To the extent that defendant suggests that evidence of his EED negates the state's evidence of intentional conduct, he is wrong. Under the statutes quoted above, proof of EED is a mitigating factor that reduces the crime of murder to manslaughter in the first degree. ORS 163.118(1)(b). It does not *negate* the intent element of murder. *See State v. Ott*, 297 Or 375, 377 n 2, 686 P2d 1001 (1984); *State v. Davis*, 44 Or App 549, 553, 606 P2d 671, *rev den* 289 Or 45 (1979). If defendant is arguing that, even if the state *did* prove intent, he carried his burden of proof as to the affirmative defense of EED, that issue was not before the trial court at the time the motion for judgment of acquittal was denied. Further, even assuming that the trial court's ultimate conclusion as to that issue is reviewable, defendant does not assign it as error on appeal.

---

thereof constitutes a gross deviation from the standard of care that a reasonable person would observe in a situation.

"The evidence presented by the state * * * has simply established that there was an altercation between [defendant] and Mr. Cross and that in the course of that that [defendant] caused the death of Mr. Cross. There's no showing that [defendant] acted with an intent to cause that death although we believe a fact finder could find taking the evidence in the light most favorable to the state that there was reckless conduct which caused that death hence we ask for a judgment of acquittal on the count of murder."

■ As to defendant's argument that the state failed to prove the element of intent, we conclude that there was sufficient evidence for a rational factfinder to conclude that the state proved that element. *See State v. Harris*, 241 Or 224, 232, 405 P2d 492 (1965). As stated above, defendant sat by Gaynor's and Cross's vehicles waiting for Cross to leave. Defendant took a two-foot piece of board and struck Cross in the head, at least twice, with sufficient force to cause Cross's death. Defendant testified that Cross was in a sitting position and defendant was standing above him when defendant struck Cross over the head. The evidence also showed that defendant himself had no significant injuries. We conclude that the trial court did not err by denying defendant's motion for a judgment of acquittal.

■ In his next assignment of error, defendant argues that the 15-year sentence exceeds the 121-month maximum sentence permitted under the sentencing guidelines. In *State v. Morgan*, 316 Or 553, 856 P2d 612 (1993), the Supreme Court held that, notwithstanding the enactment of the sentencing guidelines, a trial court is authorized to impose a determinate sentence for murder consisting of the mandatory minimum term of 10 years under *former* ORS 163.115(3)(b), *and* a discretionary consecutive term of up to 15 years under *former* ORS 163.115(3)(c). The 15-year determinate sentence was within the trial court's authority.

■ In its cross-appeal, the state argues that the trial court erred by imposing a 36-month term, rather than a life term, of post-prison supervision. OAR 253-05-004(1) provides:

> "The term of post-prison supervision for an offender serving a life sentence pursuant to ORS 163.105 or ORS 163.115 shall be for the remainder of the offender's life, unless the Board finds a shorter term appropriate. In no case shall the term of supervision be less than three years."

In *State v. Morgan, supra*, 316 Or at 560, the Supreme Court explained that, although a court is no longer authorized to impose a life sentence of imprisonment for murder, the life term of post-prison supervision continues to be required under OAR 253-05-004(1). The state concedes that it did not object below, but it requests that we exercise our discretion to review the unpreserved claim of error. ORAP 5.45(2).

Although the error is one of law that is apparent on the face of the record, we decline to exercise our discretion to review it. The record shows that, at sentencing, the state informed the court that "the sentencing guidelines call for thirty-six months post-prison supervision" and that "[w]e would ask for that." In addition, the state and defendant submitted to the trial court additional briefs and arguments on the appropriate term of imprisonment. At no time, however, did the state inform the court that it should impose a different period of post-prison supervision. We decline to exercise our discretion to reach an error that the state invited the court to make. *See State v. McEahern*, 126 Or App 201, 867 P2d 568 (1994).

Affirmed on appeal and on cross-appeal.