Argued and submitted April 22, affirmed September 15, 1999

## STATE OF OREGON,
*Respondent,*

*v.*

## MEHDI ARABZADEH,
*Appellant.*

(C970596CR; CA A99220)

986 P2d 736

Dan Maloney, Deputy Public Defender, argued the cause for appellant. With him on the opening brief was Diane L. Alessi, Interim Public Defender, and with him on the reply brief was David E. Groom, Public Defender.

Kaye E. McDonald, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Haselton, Presiding Judge, and De Muniz* and Wollheim, Judges.

DE MUNIZ, J.

---

* De Muniz, J., *vice* Warren, S. J.

**DE MUNIZ, J.**

Defendant appeals his conviction for felon in possession of a firearm. ORS 166.270. We affirm.

Defendant was one of four passengers in a car stopped for the traffic infraction of no license plate light. ORS 816.090. As the car was pulling to the side of the road, Beaverton Police Officer Cumiford observed one of the passengers in the back seat repeatedly lean toward the floor of the car. As Cumiford approached the car, the passenger, who Cumiford recognized as Travis Patterson, continued to lean down toward the floor, then pop back up and look nervously over his left shoulder. Cumiford approached the car with caution because he was aware of Patterson's criminal history and that he was a methamphetamine addict.

As Cumiford obtained the driver's (Hansen) operator's license and insurance card, he noticed a Washington County Sheriff's deputy drive by and motioned him over. Cumiford requested that the deputy provide cover as Cumiford intended to remove Patterson from the car. Cumiford then instructed Patterson to step out of the car and asked him if he was in possession of weapons or drugs. Patterson replied that he was not and consented to Cumiford's request for a pat down. Cumiford found nothing in the pat down and instructed Patterson to get back into the car. Cumiford then obtained the identification of the other passengers and ran a records check on all of the occupants of the car. After completing the record search, Cumiford returned Hansen's license and insurance card, issued Hansen a warning about the infraction and told him he was free to go. Hansen thanked the officer and said goodbye.

While standing at the driver's side door, Cumiford then asked Hansen if he would mind staying a while so that Cumiford could search the car for any drugs or weapons. Hansen opened the door and replied, "sure, no problem." Cumiford then instructed all of the occupants to get out of the car. Under the right front passenger seat, Cumiford found a .38 special Smith & Wesson revolver. Each of the occupants of the car, including defendant, informed Cumiford that the gun belonged to Patterson. However, later that evening, the

police learned that defendant owned the gun and had fired it from the car earlier that evening.

Before trial, defendant moved to suppress the gun that Cumiford found in the search of the car. The trial court held that Hansen's consent to the search of the car was lawful, that Cumiford's request for that consent was a continuation of the stop, and that the stop was justified based on Cumiford's knowledge that Patterson had a criminal history and potentially was violent. As he did to the trial court, defendant argues here that the gun should be suppressed because Cumiford illegally extended the scope and duration of the traffic stop when he obtained identification and ran a records check on the passengers, patted down Patterson for drugs and weapons, and requested Hansen's consent to search the car without independent justification.

■ On appeal, the state makes no argument in support of the trial court's ruling that Cumiford's knowledge of Patterson's criminal history and potential for violence justified the continuation of the stop and the request for consent to search the car. Instead, the state argues that defendant cannot challenge the legality of Hansen's consent under ORS 810.410 and that, in any event, contrary to the court's ruling, the stop had ended by the time Cumiford requested Hansen's consent to search; therefore, no justification for the request for consent was necessary.

For purposes of this opinion, we assume that Cumiford's request for consent to search the car extended the duration of the traffic stop without independent justification. *See generally State v. Toevs*, 327 Or 525, 964 P2d 1007 (1998) (discussing consent searches in the context of traffic stops). We also assume that Cumiford's records check of the passengers and pat down of Patterson were without independent justification and that defendant can challenge the admission of the gun based on the argument that the traffic stop had been unlawfully extended. Nevertheless, for the reasons that follow, we affirm the trial court.

ORS 136.432 provides:

"A court may not exclude relevant and otherwise admissible evidence in a criminal action on the grounds that it

was obtained in violation of any statutory provision unless exclusion of the evidence is required by:

"(1) The United States Constitution or the Oregon Constitution;

"(2) The rules of evidence governing privileges and the admission of hearsay; or

"(3) The rights of the press."

Accordingly, even assuming that Cumiford's request for consent to search the car unlawfully extended the traffic stop, in violation of ORS 810.410, we must now, in light of ORS 136.432, determine whether Hansen's consent was obtained in violation of the Oregon or United States Constitutions.

In *State v. Rodriguez*, 317 Or 27, 854 P2d 399 (1993), the Supreme Court held that unlawful police conduct may render a person's subsequent consent to search invalid under the Oregon Constitution in two separate ways. First, a subsequent consent search may be deemed involuntary when the illegality has an "effect on the state of mind of the person giving consent, affecting whether the consent is a voluntary act of that person's free will." *Id.* at 38. Separately, police misconduct may also invalidate an otherwise valid consent if "the police have exploited their prior unlawful conduct to obtain that consent." *Id.* at 40. However, *Rodriguez* makes it clear that in either situation there must be some "causal connection" between the unlawful police conduct and evidence discovered as a result of the purported consent. In *Rodriguez*, the court upheld the defendant's consent to search the residence when defendant's consent was obtained following his illegal arrest:

"[I]t is apparent that the INS agent did not trade on or otherwise take advantage of the arrest to obtain defendant's consent to the search. Indeed, there is absolutely nothing in the encounter between the agent and defendant that can be construed as exploitation of the purportedly unlawful arrest. The mere fact that, but for the arrest, the agent would not have been standing in the doorway of defendant's apartment, in a position to ask defendant about drugs and guns, does not render the evidence discovered in the subsequent consent search inadmissible." *Id.* at 41.

Here, defendant makes no argument that the consent was involuntary because Hansen's will was overborne or that, in some fashion, Cumiford exploited the illegal detention to secure Hansen's consent. Instead, defendant argues that suppression of the gun "is required for violation of ORS 810.410 because the statute is directed at defining the authority of police to search or to seize a person."[1]

It is true that the court has employed a suppression remedy where the statute violated by the police was designed to protect "interests of the kinds which are protected by the Fourth Amendment to the United States Constitution and by Article I, [section] 9, of the Oregon Constitution." *State v. Valdez*, 277 Or 621, 629, 561 P2d 1006 (1977). However, this case was decided before the enactment of ORS 136.432. That statute now limits the remedial authority of the courts and permits the exclusion of evidence obtained in violation of a statute only when exclusion is required by the United States or Oregon Constitutions or required by statutes that specifically recognize a suppression remedy. *State v. Thompson-Seed*, 162 Or App 483, 986 P2d 732 (1999).

Here, defendant has no meaningful argument that Hansen's will was overborne by the circumstances of Cumiford's request for consent to search the car or that Cumiford exploited the illegal detention in securing Hansen's consent to search. Likewise, no demonstrable causal connection exists between Cumiford's prior records check of the passengers or his pat down of Patterson and Hansen's consent to the search of the car. Because, under the circumstances, Hansen's consent was voluntary and Cumiford did not exploit any unlawful conduct to obtain Hansen's consent, the gun discovered during the search was not obtained in violation of Article I, section 9, of the Oregon Constitution.

Defendant makes no separate argument under the Fourth Amendment to the United States Constitution for suppression of the gun. Therefore, to the extent those issues

---

[1] Defendant's other arguments that ORS 136.432 may not be applied in this case have all been rejected in *State v. Fugate*, 154 Or App 643, 963 P2d 686, *adhered to as modified* 156 Or App 609, 969 P2d 395 (1998), *rev allowed* 328 Or 275 (1999).

might be analyzed differently under federal law, we have no occasion to do so here.

Affirmed.