Argued and submitted January 31; resubmitted en banc May 9, reversed and
remanded July 25, 2007

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

HEATHERLYN M. CALVERT,
*Defendant-Appellant.*

Hood River County Circuit Court
040042CR; A127128

164 P3d 1169

Brandon G. Williams, Deputy Public Defender, argued the cause for appellant. With him on the brief were Peter A. Ozanne, Executive Director, and Peter Gartlan, Chief Defender, Office of Public Defense Services.

Anna M. Joyce, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Brewer, Chief Judge, and Edmonds, Landau, Haselton, Armstrong, Wollheim, Schuman, Ortega, Rosenblum, and Sercombe, Judges.

ARMSTRONG, J.

Edmonds, J., dissenting.

**ARMSTRONG, J.**

Defendant appeals a judgment of conviction, following a trial on stipulated facts, for one count of possession of a controlled substance. *Former* ORS 475.992 (2003), *renumbered as* ORS 475.840 (2005). Defendant assigns error to the trial court's denial of her motion to suppress evidence obtained during a traffic stop. We conclude that, although defendant's claim of error is unpreserved, the error is apparent on the face of the record under *State v. Hall*, 339 Or 7, 115 P3d 908 (2005). We exercise our discretion to correct the error and reverse and remand.

■ We review the denial of a motion to suppress evidence for legal error, deferring to the trial court's findings of historical fact "if there is constitutionally sufficient evidence in the record to support those findings." *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). In this case, our recitation of the facts is based on the trial court's written findings.

Defendant was driving on I-84 when she was pulled over by an Oregon State Police trooper. The trooper explained to defendant that she was stopped for driving too fast and asked defendant for her driver's license. Defendant could not locate her license, but gave the trooper her military identification and proof of vehicle registration. The trooper went back to her patrol car and, after running a records and warrant check, wrote defendant citations for exceeding the rural interstate speed limit and driving uninsured. The trooper then walked back to defendant's vehicle, gave her the citations, and briefly explained the information included on the back of the citations.

At that point, the trooper asked defendant if she had any weapons or open containers; defendant responded "no" in both instances. The trooper then requested and obtained defendant's consent to search the vehicle. That entire verbal exchange took approximately 30 seconds. The trooper searched the vehicle and found a duffle bag behind the seat. She asked defendant for consent to search it. Defendant consented, but not before first removing an eyeglass case. After searching the bag, the trooper asked defendant if she could look inside the eyeglass case. Defendant opened the case, and

the trooper observed a pipe with what appeared to be meth-
amphetamine residue in it. The trooper tested the residue
and determined that it was methamphetamine.

Before trial, defendant moved to suppress the evi-
dence obtained as a result of the traffic stop, contending that,
at the time that the trooper asked for permission to search
the vehicle, defendant was unlawfully seized and the evi-
dence should be suppressed because her consent to the
search was not voluntary. In a written opinion after an evi-
dentiary hearing on the motion, the trial court agreed that
defendant was unlawfully detained when the trooper asked
for consent to search the vehicle, but, citing *State v.
Rodriguez*, 317 Or 27, 38-40, 854 P2d 399 (1993), explained
that the evidence "need not be suppressed unless the con-
sent was involuntary or it resulted from police exploitation
of the unlawful detention." Because, as the court noted,
"[d]efendant raised the issue of voluntariness, not exploita-
tion," the court limited its consideration to that issue. The
court then concluded that the state had adequately proved
the voluntariness of defendant's consent and denied defen-
dant's motion to suppress the evidence. Defendant filed a
motion to reconsider, again arguing that her consent was not
voluntary. The court denied that motion as well.

On appeal, defendant takes a different tack.[1] Defen-
dant now argues that the trial court should have suppressed
the evidence on the ground that her consent to search was
obtained through police exploitation of her unlawful deten-
tion, thereby violating her rights under Article I, section 9, of
the Oregon Constitution.[2] Defendant contends that she
raised that issue in the trial court, but that, even if we deter-
mine that the issue was not adequately preserved, we should
nevertheless review it as error apparent on the face of the
record in light of the Supreme Court's decision in *Hall*.

_____

[1] Defendant does not renew on appeal her argument that the evidence should
have been suppressed because her consent was not voluntary.

[2] Article I, section 9, of the Oregon Constitution provides:

"No law shall violate the right of the people to be secure in their persons,
houses, papers, and effects, against unreasonable search, or seizure; and no
warrant shall issue but upon probable cause, supported by oath, or affirmation,
and particularly describing the place to be searched, and the person or thing to
be seized."

In *Hall*, which was decided after the trial of this case, the Supreme Court clarified that "evidence obtained from a search following an otherwise valid consent is subject to suppression under the Oregon exclusionary rule if [the] defendant's consent is the product of the preceding unlawful police conduct" (what defendant refers to here as "exploitation" of the unlawful conduct). 339 Or at 36. The Supreme Court explained:

> "After a defendant shows a minimal factual nexus between unlawful police conduct and the defendant's consent, then the state has the burden to prove that the defendant's consent was independent of, or only tenuously related to, the unlawful police conduct."

*Id.* at 34-35. The court then held that the state had not met its burden of proving that the defendant's decision to consent to the search was independent of, or only tenuously related to, the preceding unlawful stop, "[g]iven the close temporal proximity between the illegal detention and [the] defendant's consent [to search], and the absence of any intervening circumstances or other circumstances mitigating the effect of that unlawful police conduct." *Id.* at 36. Thus, evidence from the search was subject to suppression.

The state first disagrees that defendant preserved her "exploitation" claim. Next, although the state concedes that it was plain error under *Hall* for the trial court to deny defendant's suppression motion on the evidentiary record in this case, it argues that we should refrain from exercising our discretion to correct the error, because doing so would undermine preservation principles. According to the state, had defendant properly raised the question of exploitation before the trial court, the "trial court could have considered and, if necessary, correct[ed] any error, and the state would have been afforded an opportunity to respond."

Generally, an issue not preserved in the trial court will not be considered on appeal, unless it is an "error of law apparent on the face of the record." ORAP 5.45(1). *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 381, 823 P2d 956 (1991). To preserve a claim of error, "a party must provide the trial court with an explanation of his or her objection that is specific enough to ensure that the court can identify its alleged

error with enough clarity to permit it to consider and correct the error immediately, if correction is warranted." *State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000).

■ In this case, we readily conclude that defendant failed to preserve her claim of error regarding exploitation. As we understand it, defendant's argument is that, although "voluntariness was the primary focus" of her motion, both she and the state "broach[ed] the issue" of exploitation during the hearing on the motion, and the trial court mentioned it in its ruling. Consequently, in defendant's view, the court had an opportunity to consider the issue and, thus, the error is adequately preserved.

We disagree. In defendant's written motion, her oral argument before the court at the hearing on the motion, and her motion for reconsideration, defendant contended only that the evidence obtained during the search should be suppressed because her consent was not voluntary. She never argued that suppression was required because the evidence was the product of police exploitation of the unlawful stop. Indeed, during the hearing on her motion, defendant explicitly stated that her argument was so limited:

> "The real issue here—the—really the *only* issue is whether her consent was voluntary or not, and that's a two-part test as it's been laid out. And she testified that she didn't feel like she had any choice; there's no reason to disbelieve that.
>
> "So that the first part is whether—what her state of mind is. * * * If you look at the language [from *State v. Arabzadeh*, 162 Or App 423, 986 P2d 736 (1999)] that the prosecutor was just talking about, they start of[f] by saying, 'In *State v. Rodriguez,* subsequent consent to search is invalid under the Oregon Constitution in two separate ways.' And I think it's important that you keep those separate. One is whether the illegality had an effect on the listener's mind, which she testified it did. And then the other is the—when you get into the exploitation, and that's not really the main argument we're making. It's simply her state of mind."

(Emphasis added.) The court noted that and, accordingly, limited its analysis to the question of whether defendant's

consent was voluntary. Defendant's mere mention of the exploitation issue, in the context of *rejecting* it as a possible argument, did not provide the trial court with a specific enough explanation of the issue so as to permit the court to address and rule on it.

We proceed to the question whether the unpreserved error is "apparent on the face of the record." ORAP 5.45(1). An error is apparent on the face of the record, or is "plain error," when it is a legal error, the legal point is obvious or not reasonably in dispute, and the court is not required to go outside the record or select among competing inferences to decide it. *State v. Brown*, 310 Or 347, 355, 800 P2d 259 (1990). Whether an error is plain is determined with reference to the law existing at the time of the appellate decision. *State v. Jury*, 185 Or App 132, 136, 57 P3d 970 (2002), *rev den*, 335 Or 504 (2003). If we determine that an unpreserved error is plain, we must then decide whether it is appropriate for us to exercise our discretion to address the error, considering such factors as "the competing interests of the parties; the nature of the case; the gravity of the error; the ends of justice in the particular case; how the error came to the court's attention; and whether the policies behind the general rule requiring preservation of error have been served in the case in another way[.]" *Ailes*, 312 Or at 382 n 6.

Here, the state does not dispute that the prerequisites for plain error have been met. Indeed, the state concedes—and we agree—that it is not reasonably in dispute after *Hall* that defendant's consent to the search was obtained through exploitation of an unlawful stop and, therefore, that it was plain error for the court to deny defendant's motion to suppress.

The question remains, however, whether it is appropriate for us to exercise our discretion to correct the error. We conclude that it is. First, the error is of sufficient gravity to warrant correction because defendant's conviction depended on the admission of the drug evidence that she sought to suppress.

Second, preservation principles will not be violated by our correction of the error. On the facts of this case, defendant did not appear to have a viable exploitation argument to

make under *Rodriguez*. Under *Rodriguez*, evidence obtained from a consent search was subject to suppression if the police obtained the consent through the use of information that they had obtained from an unlawful search or seizure. 317 Or at 38-42. Here, the unlawful stop produced no information that led the officer to ask defendant for consent to search her car and its contents. That presumably explains why defendant's trial counsel challenged only the voluntariness of defendant's consent, which is the other ground that was available to defendant under *Rodriguez* to challenge the consent search in this case. *Id.*

Counsel *could have* raised the exploitation issue to preserve an argument for a different understanding of exploitation under Article I, section 9, that is, for the understanding that the Supreme Court subsequently established in *Hall*. However, there is no reason for counsel to have anticipated *Hall*, and counsel cannot be faulted for not developing on his own the analysis that the court adopted in *Hall*, an analysis that few people envisioned. Consequently, had counsel made an exploitation argument in this case, the trial court presumably would have rejected it, and, but for *Hall*, we presumably would have affirmed that decision on appeal if the issue had been preserved.

*Hall*, which came after the suppression ruling in this case, changed everything. As the state now concedes, *Hall* establishes that the police violated Article I, section 9, in obtaining the evidence that defendant sought to suppress in this case, notwithstanding that defendant consented to the search that produced the evidence. The state also does not argue that the record might have been different if defendant had made an exploitation argument in support of her suppression motion. In other words, raising and preserving the exploitation argument would have made *no* difference at the trial level, and there is *no* dispute that, under *Hall*, the denial of defendant's motion to suppress *now* constitutes plain error. Hence, our decision to exercise our discretion in this case is consistent with preservation principles, because raising the exploitation argument below would have made no difference to the trial court's ruling.

Finally, the error is not one that can be corrected through post-conviction relief. Before *Hall*, reasonable counsel could believe that there was no basis on which to seek suppression of the drug evidence in this case on exploitation grounds. Consequently, counsel's failure to seek suppression on that basis would not constitute constitutionally deficient representation that would entitle defendant to obtain post-conviction relief from her conviction. Hence, were we not to exercise our discretion to correct the error in this case, defendant would be left with a conviction that is based on evidence that the state obtained in violation of defendant's rights under Article I, section 9, and that defendant sought to suppress at trial under that provision. We are satisfied that it would be a mistake for us to affirm defendant's conviction under the circumstances of this case.

The dissent disagrees with our decision to exercise our discretion to correct the plain error in this case. In its view, our exercise of discretion is inconsistent with our decisions in *State v. Gaynor*, 130 Or App 99, 880 P2d 947 (1994), and *State v. McEahern*, 126 Or App 201, 867 P2d 568 (1994). The dissent is wrong.

In both *Gaynor* and *McEahern*, we declined to exercise our discretion to correct plain errors that the parties seeking the corrections on appeal had invited the trial courts to make. In both cases, the parties had affirmatively misstated the law, and the trial courts had relied on those misstatements to take the actions that they did. Critically, the law at issue in both cases did not change between the time that the trial courts acted and the time that we decided the appeals. In other words, the errors were equally plain at trial and on appeal. Consequently, but for the parties' misstatements, the courts presumably would not have committed the errors that they did. Under those circumstances, preservation principles properly applied, because the trial courts could have avoided the errors if the parties had correctly stated the law to them. Hence, it was appropriate for us to decline to exercise our discretion in those cases to correct the errors.

Here, in distinct contrast, the law changed between the time that the trial court denied defendant's motion to

suppress and the time that we are deciding the appeal of that denial. Before *Hall*, the trial court arguably would not have erred by rejecting an exploitation-based argument against the consent search in this case. After *Hall*, the rejection of that argument is plain error, as the state concedes. Hence, in contrast with *Gaynor* and *McEahern*, defendant's failure to raise and preserve an exploitation argument did not affect the trial court's decision to deny defendant's suppression motion. Our decision to correct the plain error in this case does not undermine preservation principles and does not conflict with *Gaynor* and *McEahern*.[3]

Reversed and remanded.

**EDMONDS, J.,** dissenting.

I disagree with the majority's decision to exercise its discretion to review the claim of error in this case as error apparent on the face of the record. More particularly, the majority erroneously elects to exercise its discretion in this case after defendant expressly told the trial court that she was not raising the ground for suppression of evidence that she now raises on appeal. In my view, for the reasons explained below, the representation made by defendant to the trial court falls squarely within the "invited error" doctrine. As a result, the decision of the majority to review for plain error is not only unprecedented, but is contrary to established policies underlying preservation of error requirements and the "error apparent on the face of the record" exception to the requirement for preservation.

On appeal, defendant argues under Article I, section 9, of the Oregon Constitution that evidence seized from her vehicle after a lawful traffic stop must be suppressed because the officer conducting the stop unlawfully exploited the duration of the stop by asking defendant for her consent to search

---

[3] It perhaps bears emphasis that the parties in *Gaynor* and *McEahern* affirmatively misstated the law and thereby led the trial courts to commit the errors that they did. Here, trial counsel did not misstate any law. This case would be comparable to *Gaynor* and *McEahern* if *Hall* had been decided before the trial court had ruled on defendant's suppression motion and if counsel had told the court that the police conduct in this case did not constitute exploitation under Oregon law. Neither of those conditions is met here.

her vehicle. The threshold issue is whether defendant complied with the provisions of ORAP 5.45(1), which provides, in part:

> "No matter claimed as error will be considered on appeal unless the claimed error was preserved in the lower court and is assigned as error in the opening brief in accordance with this rule, provided that the appellate court may consider an error of law apparent on the face of the record."

If defendant's claim was not preserved under ORAP 5.45(1), this court is without authority to review defendant's claim of error on appeal unless it exercises its discretion to review on the basis of error apparent on the face of the record. I agree with the majority's conclusion that defendant did not preserve the issue that she now raises on appeal.[1] However, the majority and I disagree about whether this court should exercise its discretion to review defendant's claim of error as error apparent on the face of the record.

The seminal case regarding the exercise of discretion to review error apparent on the face of the record is *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 823 P2d 956 (1991), a case in which the Supreme Court reversed this court's decision after it had exercised its discretion to review a claim of error that had not been raised in the trial court. In *Ailes*, the court reiterated the holding of *State v. Brown*, 310 Or 347, 355-56, 800 P2d 259 (1990), in which it had articulated the

---

[1] Defendant advances a different ground for suppression of the evidence on appeal than she asserted in the trial court. In *State v. Chavez*, 335 Or 44, 56 P3d 923 (2002), a similar situation arose. In that case, the defendant told the trial court that the Vienna Convention on Consular Relations (VCCR) did not confer on him any individual rights beyond those conferred by the Fifth and Fourteenth Amendments to the United States Constitution under the *Miranda* decision. On appeal, however, he argued that the trial court erred in not suppressing evidence allegedly obtained in violation of the VCCR. 172 Or App 326, 328, 19 P3d 923 (2001). On review, the Supreme Court held that the defendant had not preserved the error in the trial court that he sought to assert on appeal. It explained,

> "In contrast to the arguments that defendant made on appeal and now makes on review, he expressly told the trial court that he was not trying to argue that the VCCR created individual rights beyond those that *Miranda* confers. By asserting that the court's resolution of the *Miranda* claim was dispositive, defendant affirmatively asked the trial court not to consider the argument that he seeks to advance in this court. * * * The Court of Appeals should not have reached the merits of defendant's argument under the VCCR."

*Chavez*, 335 Or at 48.

standards that courts must apply under ORAP 5.45(1). In sum, those standards impose a two-step process: first, a reviewing court must determine whether the error is one of law, whether the error is obvious and not reasonably in dispute, and whether it appears on the face of the record. *Ailes* describes the second step of the process as follows:

"Even if the error meets [the first step of the test], however, the appellate court must exercise its discretion to consider or not to consider the error, and if the court chooses to consider the error, the court must articulate its reasons for doing so. This is not a requirement of mere form. A court's decision to recognize unpreserved or unraised error in this manner should be made with utmost caution. Such an action is contrary to the strong policies requiring preservation and raising of error. It also undercuts the established manner in which an appellate court ordinarily considers an issue, *i.e.*, through competing arguments of adversary parties with an opportunity to submit both written and oral arguments to the court."

312 Or at 382 (citation omitted).

The *Ailes* court also outlined the factors that should be considered by courts in the exercise of discretion to review error apparent on the face of the record:

"In future applications of this rule, in deciding whether to exercise its discretion to consider an error of law apparent on the face of the record, among the factors that the court may consider are: the competing interests of the parties; the nature of the case; the gravity of the error; the ends of justice in the particular case; how the error came to the court's attention; and *whether the policies behind the general rule requiring preservation of error have been served in the case in another way, i.e., whether the trial court was, in some manner, presented with both sides of the issue and given an opportunity to correct any error.* Those factors do not comprise a necessary or complete checklist; they merely are some of the permissible considerations."

312 Or at 382 n 6 (citations omitted; emphasis added).

Whether this court should exercise its discretion to review for plain error in this case requires the application of the above principles. In her written motion to suppress evidence seized as a result of her consent to search, defendant

framed the issue as follows: "the question remains whether [defendant's] consent was voluntary under the totality of the circumstances." During oral argument on the motion, defense counsel told the trial court:

"The real issue here * * * really[,] the only issue is whether her consent was voluntary or not, and that's a two-part test as it's been laid out. And she testified that she didn't feel like she had any choice; there's no reason to disbelieve that.

"So that the first part is whether—what her state of mind is. And interestingly enough, the passage that [the prosecutor] just cited to you in [*State v.*] *Arabzadeh*[, 162 Or App 423, 427, 986 P2d 736 (1999)], also makes that very clear. If you look at the language he was just talking about, they start of[f] by saying, 'In *State v. Rodriguez*[, 317 Or 27, 854 P2d 399 (1993)], subsequent consent to search is invalid under the Oregon Constitution in two separate ways.'[2] And I think it's important that you keep those separate. One is whether the illegality had an effect on the listener's mind, which she testified that it did. And then the other is the—when you get into exploitation, and that's not really the main argument we're making. It's simply her state of mind."

The trial court rendered a letter opinion ruling on defendant's motion. In that letter, the court found that the state "has proved the voluntariness of the consent by a preponderance of the evidence." It also observed that, "[i]n the case at bar, Defendant has raised the issue of voluntariness, not exploitation. Therefore, the Court is limited to that issue." When the court's ruling is read in connection with defense counsel's argument, it is evident that the court was responding to defense counsel's representations to the trial

---

[2] In *Arabzadeh*, we stated:

"In *State v. Rodriguez*, 317 Or 27, 854 P2d 399 (1993), the Supreme Court held that unlawful police conduct may render a person's subsequent consent to search invalid under the Oregon Constitution in two separate ways. First, a subsequent consent search may be deemed involuntary when the illegality has an 'effect on the state of mind of the person giving consent, affecting whether the consent is a voluntary act of that person's free will.' *Id.* at 38. Separately, police misconduct may also invalidate an otherwise valid consent if 'the police have exploited their prior unlawful conduct to obtain that consent.' *Id.* at 40."

162 Or App at 427.

court that "the only issue is whether her consent was voluntary." Indeed, counsel's references to *Rodriguez*, and to our statement in *Arabzadeh* that unlawful police conduct may render a person's subsequent consent to search invalid in two separate ways, his caution to the trial court not to confuse alternative grounds for suppression that were available, and his reminder to the trial court that "exploitation" was not "the main argument we're making" all support the understanding that the only issue defendant chose to raise for the trial court to decide was the voluntariness of her consent. That understanding is further supported by defendant's motion asking that the trial court reconsider its ruling that her consent was not voluntary.

Defendant asserts that we should review her claim of error on appeal as error apparent on the face of the record because "[t]he trial court had a clear opportunity to address the question of exploitation but declined to do so." The implications of defendant's argument present a dilemma for trial courts because it suggests that, to avoid committing error, a trial court must rule on issues that have been removed from its consideration by the parties. The ramifications of defendant's argument are extreme and fail to recognize the realities of trial practice. No tenet of trial practice requires a trial court to rule on all issues that it perceives. Rather, as the trial court ruled in this case, it is proper practice that trial courts rule only on the issues framed by the parties. Otherwise, a trial court would end up trying the case for the lawyers and the parties. What defendant's argument suggests, however, is that, to avoid reversal on appeal, trial courts must ignore the ways in which the parties have framed the issues and rule on issues that the parties have expressly told the court not to address. To adopt the majority's proposed rule as a rule of trial practice is to adopt the unworkable.

Moreover, defendant's statements to the trial court implicate the doctrine of "invited error." Not only did defendant not preserve an argument regarding unlawful exploitation, she expressly invited the trial court not to rule on that ground. "Invited error" occurs when an appellant is "actively instrumental in bringing about the error" and invited error "cannot serve as basis for reversal." *State v. Barber*, 209 Or App 262, 267 n 2, 147 P3d 915 (2006), *rev allowed*, 342 Or 644

(2007).[3] The purpose underlying the rule is to "ensure that parties do not 'blame the court' for their intentional or strategic trial choices that later prove unwise" in order to obtain a new trial. *State v. Fults*, 210 Or App 150, 154, 149 P3d 1248 (2006), *rev allowed*, 343 Or 33 (2007) (quoting *State v. Ferguson*, 201 Or App 261, 269, 119 P3d 794 (2005), *rev den*, 340 Or 34 (2006)). The doctrine of "invited error" applies in this case because defendant was "actively instrumental in bringing about the error" that she now asserts on appeal. *Barber*, 209 Or App at 267 n 2. *See also State v. Koennecke*, 274 Or 169, 173-74, 545 P2d 127 (1976) (holding that the state invited the error of which it complained on appeal after it suggested to the trial court that it enter an order suppressing evidence to which the defendant had made no pretrial objection and then appealed from that order). By expressly inviting the trial court not to rule on what her counsel knew to be a legally cognizable ground for suppression under *Rodriguez* and to rule only on the issue of voluntariness, defendant invited the error that she complains about on appeal.

Defendant's invitation to the trial court to not rule on the issue of exploitation is controlling on the question of whether we should exercise our discretion under ORAP 5.45(1) to review defendant's claim of error on appeal. In at least two prior decisions of this court, we have rejected similar arguments. In *State v. Gaynor*, 130 Or App 99, 880 P2d 947 (1994), *rev den*, 320 Or 508 (1995), the state cross-appealed the imposition of a 36-month term, rather than a life term, of post-prison supervision. However, the record showed that the state had informed the trial court that the applicable term of post-prison supervision was 36 months. Citing *State v. McEahern*, 126 Or App 201, 867 P2d 568 (1994), we declined to exercise our discretion to reach a claim of error after the state had invited the trial court to make the

---

[3] The rule that "invited error" cannot serve as a basis for reversal has been characterized by the Supreme Court as a "sound principal of judicial administration." *Clay/Luttrell v. Pay Less Drug Stores*, 276 Or 673, 677, 556 P2d 125 (1976). That view of the invited error doctrine suggests that invited error does not qualify as *error* apparent on the face of the record for purposes of the first step in *Ailes* because invited error is not error.

ruling that was the subject of that claim. *Gaynor*, 130 Or App at 107.

In *McEahern*, defense counsel insisted incorrectly to the trial court that it had discretion under the sentencing guidelines to deny the defendant credit for time served on his criminal convictions. However, on appeal, the defendant argued that the trial court had erred by denying him credit for time served. The state conceded on appeal that the court lacked authority to deny the defendant credit for time served. However, it urged that, because the defendant had incorrectly told the court that it had discretion when it did not, the error was invited. We agreed with the state's argument, concluding that the defendant had failed to preserve the error complained of on appeal. Also, more important to this case, we declined to exercise our discretion under ORAP 5.45 to review the defendant's claim of error in light of several Supreme Court precedents, including *Ailes*, that help to define the parameters of when our discretion should be exercised. *McEahern*, 126 Or App at 204.

The majority errs when it fails to follow our precedents in *Gaynor* and *McEarhen*.[4] The holdings in those opinions correctly apply the policies expressed in *Ailes*. If a defendant expressly informs a trial court that he or she is not raising a particular issue but then claims error on appeal because the court did not address the issue, it is difficult to perceive how the court "erred." Courts commit "error" by making erroneous rulings or by not making rulings when requested to do so by parties to litigation. But the majority's reasoning constructs a new category of error for appeal—one in which a trial court commits error because it does what is

---

[4] The majority attempts to distinguish this case from the circumstances in *Gaynor* and *McEahern* on the basis that, in this case, unlike in those cases, "the law at issue in both cases did not change between the time that the trial courts acted and the time that we decided the appeals." 214 Or App at 235. But what the majority fails to recognize, as amplified below, is that the rule of law that police cannot exploit their unlawful conduct to obtain consent to search is not a new rule of law announced for the first time in *State v. Hall*, 339 Or 7, 115 P3d 908 (2005); the rule preexisted that case by many years. Moreover, the majority does not explain why the policies underlying preservation of error are promoted by its decision to exercise its discretion when defendant herself recognized the existence of the rule, but chose not to raise it in the trial court.

requested of it by an appellant. I submit that that reasoning finds no basis in law.

Finally, the majority's reasoning not only deprives trial courts of the opportunity to consider and correct any claim of error, but it also prevents parties from having the opportunity to fully litigate issues in the trial court. For instance, in a typical traffic stop case where consent to search a vehicle is eventually obtained from the driver, there may be legally justifiable reasons for additional questions or detention that could be developed by further evidence if the parties were given that opportunity at trial. But, if a defendant need not raise an issue like unlawful exploitation of the stop in the trial court in order to raise it on appeal, the result is "appeal by ambush."[5]

Until now, we have endeavored to faithfully adhere to the boundaries established by *Ailes* for the exercise of our discretion under ORAP 5.45(1). Our decision in *State v. Jury*, 185 Or App 132, 57 P3d 970 (2002), *rev den*, 335 Or 504 (2003), is exemplary in that regard. In *Jury*, the defendant appealed from drug-related convictions. During trial, the court admitted evidence that had been obtained by the police through the use of a body wire. Shortly before trial, we had held in a different case that there was no statutory or constitutional impediment to the use of a body wire without obtaining a court order authorizing such use, so long as the police had probable cause to believe that the conversations would involve illegal drug transactions. *State v. Bass*, 126 Or App 303, 868 P2d 761 (1994), *vac'd*, 331 Or 693, 21 P3d 1086 (2001). Accordingly, the defendant in *Jury* did not object in the trial court to the introduction of evidence obtained from the body wire in his case because of the lack of a court order. After the defendant was convicted, the Oregon Supreme Court held in another case that the applicable statute required the police to obtain court orders before using body wires to intercept communications. *State v. Fleetwood*, 331 Or 511, 525-30, 16 P3d 503 (2000). On appeal in *Jury*, the

---

[5] The public also has a stake in the rule requiring that the exceptions to the requirement of preservation be limited in scope. If litigants are permitted to raise issues for the first time on appeal, the finality of litigation at the trial level is significantly affected, adding additional costs to the litigants and to the public.

defendant asserted for the first time that our decision was wrong.

We agreed with the defendant in *Jury* that the requirements for error apparent on the face of the record under ORAP 5.45 were satisfied as a result of the Supreme Court's decision. Initially, we concluded that "plain error" could be determined by reference to the law existing at the time of the appeal and is not restricted to the law as it existed at the time of trial. 185 Or App at 136. We also recognized, however, that by defining error apparent on the face of the record by reference to the law existing at the time of the appeal,

> "[we] *could* subvert important principles of preservation of error and comity with trial courts. That is, ingenious appellate counsel * * * *could* use 'plain error' as a device for reversing trial courts on grounds that were never raised at trial—but could have, and should have, been raised."

185 Or App at 138 (emphasis in original).

We then observed in *Jury* that *Ailes*'s second step acts a "baffle" on "free-wheeling consideration of 'plain error,'" ensuring that "review of plain error will be the exception, and not the rule," and that the criteria identified in *Ailes*, 312 Or at 382 n 6, "ensure that the appellate courts will bypass principles of preservation only in extraordinary circumstances." *Jury*, 185 Or App at 138-39. That observation was consistent with the *Ailes* court's admonishment that a decision to recognize unraised error must be made "with utmost caution" so as to not undercut the established manner in which appellate courts ordinarily consider issues or the policies that the rule of preservation promotes.[6]

Applying the *Ailes* criteria, we elected to exercise our discretion in *Jury* for two related reasons: first, the defendant's failure to raise and preserve his objection at trial was justifiable because of our holding that occurred just before

---

[6] In *State v. Gornick*, 340 Or 160, 166-67, 130 P3d 780 (2006), the court, relying on *Ailes*, stated, "[A]s this court has warned in the past," the exercise of discretion to consider a claim of error where no ruling has been sought from the trial court should occur only in "rare and exceptional cases" where the competing interests for preservation cannot be satisfied in some way.

trial; and second, even if defense counsel had raised the objection, the trial court would have properly rejected his argument under our existing precedent. Under those circumstances, we concluded that exercising our discretion would not subvert the comity considerations that underlie the requirement of preservation. *Jury*, 185 Or App at 140.[7]

The circumstances of this case are in stark contrast to the circumstances in *Jury*, where controlling appellate court precedent changed after trial. Before this case was decided in the trial court in 2004, the law was clear that an intentional and significant interference with a person's liberty of movement constituted a seizure under Article I, section 9. In *State v. Warner*, 284 Or 147, 165, 585 P2d 681 (1978), the court held that a seizure occurred at the moment that the officer told the defendant to place his identification on the table and advised him that he was the subject of a criminal investigation. In *State v. Painter*, 296 Or 422, 676 P2d 309 (1984), a police officer approached the defendant on the street and requested to see his identification. The defendant responded by handing the officer both an expired driver's license and several credit cards. While retaining those articles, the officer ran a check for outstanding warrants and continued to question the defendant. Based on those facts, the Supreme Court held that the officer had seized the defendant's person when he retained his identification cards because that action had the practical effect of preventing the defendant from leaving. *Id.* at 425.

*Rodriguez* was decided in 1993 and cited *State v. Williamson*, 307 Or 621, 772 P2d 404 (1989), for the principle that "[e]xploitation occurs when the police take advantage of the circumstances of their unlawful conduct to obtain the consent to search[.]" *Rodriguez*, 317 Or at 40. Indeed, the

---

[7] Our reasoning in *Jury* is consistent with the reasoning of the Supreme Court underlying the holding in *Kuhnhausen v. Stadelman*, 174 Or 290, 311, 148 P2d 239 (1944), in which the court determined that "plain error" review was appropriate regarding the failure of an appellant to take an exception to an erroneous jury instruction given by the trial court after the judge declared that his personal opinion differed from the law announced by the Supreme Court on the subject. The court concluded that it was not to be expected in that case that the taking of an exception would have induced a correction in the instructions by the trial court. In *Gornick*, the court cited *Kuhnhausen* as an example of a "rare and exceptional" case where plain error review was proper. 340 Or at 166.

facts in this case, according to defendant's version of what occurred, are similar to the facts in *State v. Ehret*, 184 Or App 1, 9, 55 P3d 512 (2002), where we held that the defendant was unlawfully detained after a traffic stop had been completed and that his admissions obtained thereafter as a result of the exploitation of the detention should have been suppressed. In that case, the overhead lights of the patrol car were left on and the officer did not deliver the citations to the defendant but instead placed them on the hood of the car while he questioned the defendant.

Nonetheless, the majority posits that "defendant did not appear to have a viable exploitation argument to make under *Rodriguez*," and that "there is no reason for counsel to have anticipated [*State v. Hall*, 339 Or 7, 115 P3d 908 (2005)]." 214 Or App at 233-34. The majority is wrong on both counts. The majority's assertion that defendant did not have a viable argument to make under Article I, section 9, based on the exploitation of the unlawful extension of the duration of a traffic stop is simply not tenable in light of the above-referenced case law and the fact that the motion in this case was heard in 2004, or two years after our decision in *Ehret*. Moreover, as a matter of statutory law, the officer had no authority to continue the stop to look for weapons once the citations were prepared and could have been handed to defendant. *See* ORS 810.410(3)(d) (A police officer "[m]ay stop and detain a person for a traffic violation for the purposes of investigation reasonably related to the traffic violation, identification and issuance of citation."); *see also State v. Farley*, 308 Or 91, 775 P2d 835 (1989) (holding that officer's authority to detain person stopped for alleged traffic violation ended when the reason for the stop no longer existed).

Also, contrary to the majority's assertion, *Hall* did not announce a new, previously unrecognized rule of law regarding continued detentions of motorists after a traffic stop ends. In *Hall*, the question was whether the officer's encounter with the defendant, a pedestrian, turned into a "stop" under ORS 131.615(1) and Article I, section 9, when the officer took the defendant's identification card and used it to determine if there were outstanding arrest warrants for

the defendant.[8] The *Hall* court began its analysis by observing that a seizure of a person under Article I, section 9, occurs when either (1) a police officer intentionally and significantly interferes with a person's liberty of movement; or (2) a person believes that his or her liberty of movement has been so restricted and such a belief was objectively reasonable under the circumstances.[9] For those propositions, the *Hall* court cited *State v. Holmes*, 311 Or 400, 409-10, 813 P2d 28 (1991), a case in which the defendant motorist was stopped so that an officer could advise him of an accident and a detour in the road ahead.

The rule of *Holmes*—that a seizure of a person occurs when the person reasonably believes that his or her liberty of movement has been restricted by a law enforcement officer—was also applied to traffic stops of motorists in *State v. Toevs*, 327 Or 525, 964 P2d 1007 (1998). In that case, the defendant was stopped for operating a vehicle that did not have its headlights on. The officer decided not to issue a citation but sought consent to search the defendant's vehicle, a consent that led to the seizure of controlled substances in the defendant's vehicle. Applying the rule of *Holmes* to detentions following a lawful stop, the *Toevs* court held that the ensuing questioning after the reason for the stop had ended constituted an unlawful detention under ORS 810.410(3)(b) (1993) and that the trial court erred when it denied the defendant's motion to suppress. 327 Or at 536-38. To the extent that *Hall* is "new law," it is only new law in the sense that *Hall* applied the previously announced test in *Holmes* to pedestrians in light of the Supreme Court's prior decisions in *Warner* and *Painter*.

It is also plausible that defendant made a tactical decision not to make an exploitation argument, even though she recognized that it was available to her under the existing law. The record shows that a traffic stop occurred after the officer observed defendant traveling 15 miles per hour over

---

[8] The *Hall* court reiterated that the analysis under ORS 131.615 and Article I, section 9, is substantially the same. 339 Or at 16.

[9] As explained in the above paragraphs, defendant expressly relied only on the latter principle in the trial court and disclaimed any reliance that a seizure had occurred because the officer significantly interfered with defendant's movement.

the posted speed limit. The officer had turned on her overhead lights to stop defendant. The officer approached the car and obtained identification from defendant and her two passengers. She returned to her patrol car and "ran a routine check for driving record on [defendant] and for warrants on all three of them." She then prepared citations to give to defendant for exceeding the speed limit and for driving uninsured. She then returned to defendant's car. The overhead lights of the patrol car were still on. According to defendant, after writing the citations, the officer gave defendant's military identification back to her, but not the citations. While withholding the citations, the officer asked if defendant had any weapons in the car and whether she could look in the car. Defendant testified that, under the circumstances, she did not feel like she had any choice in consenting to the search because "I figured that she would [have] searched it either way, if I had said no." However, the officer testified that she gave the citations to defendant before she asked defendant for consent to search.

Based on the above facts, defendant could have believed that, if she had elected to challenge her consent to search on the basis of the officer's act of unlawfully withholding the citations, she would have put herself into a credibility contest with the officer. But defense counsel sought to avoid that issue through a different focus, a focus that entailed arguing that the traffic investigation was at an end, once the officer had prepared the citations. He told the trial court:

> "[W]hether she gave the tickets—actually gave the tickets or not I think is irrelevant. The stop ended when it should have ended. She returns the I.D. At that point she should have returned the tickets. Whether she actually remembered to do that, I don't think makes a lot of difference."

Instead, defendant relied in closing arguments on our quotation from *Rodriguez* in *Arabzadeh* that, alternatively, a subsequent consent search may be deemed involuntary when the illegality has an "effect on the state of mind of the person giving consent, affecting whether consent is a voluntary act of that person's free will."[10] Defense counsel told

---

[10] Defendant's counsel cited *Arabzadeh,* 162 Or App at 427, which in turn cites *Rodriguez*, 317 Or at 38.

the court, "So it's involuntary because she's testified that her state of mind that she didn't have a choice. The only other issue is whether that's a reasonable belief." He continued,

"[I]t's pretty easy to find that a reasonable person in her situation would not feel like they had the right to refuse. * * * She's young. She looks young. She was nervous on the witness stand. It's not like we're dealing with some 45-year-old guy, who's, you know, been a truck driver for 20 years who doesn't have any problem talking back to a police officer at all.

"You've got a young, 19-year-old girl who's nervous in court, who's nervous about getting on the witness stand, and it's hard to imagine that a reasonable person * * *.

"But a reasonable person in her position—in her position both out there in terms of the stop in the street and in terms of her age and that type of thing and her level of assertiveness, or her lack of assertiveness, certainly would not have felt free to refuse the consent."

Under her version of the facts, defendant had no choice but to wait until the officer delivered the citations to her and the overhead lights were turned off in order for the traffic investigation to be completed. Moreover, had defendant left without receiving the citations with the patrol car's overhead lights on, she faced the prospect of being charged under ORS 811.535 for failing to obey a police officer or fleeing or attempting to elude a police officer under ORS 811.540, as well as being unaware of when to appear in court in response to the undelivered citations. *See, e.g.*, ORS 809.220 (providing for suspension of driving privileges and other procedures for failing to appear on a citation for a traffic offense). Thus, under defendant's version of the facts, she would have had a viable argument that the police unlawfully exploited the stop under the case law that pre-existed *Hall*. It is also evident from the record that defendant was aware of her options: she could have asserted under Article I, section 9, and *Toevs* that she was unlawfully detained based on the withholding of the citations after the reason for the traffic stop had ended; she could have contended, as she did, that her consent was involuntary; or she could have made both arguments. Regardless of her reasons for not raising the exploitation issue, it is improper for this court to insert an

issue into the case as "plain error" that was supported by case law existing at the time of trial but that defendant intentionally declined to raise.

In summary, this case is not the rare and exceptional case where plain error review is proper. If defense counsel's tactical decision was unreasonable, then the legislature has provided a remedy under the Post-Conviction Relief Act. Whether that remedy is available to defendant in this case is immaterial to the policies underlying the need for preservation of error in trial courts. Moreover, direct appeal is not the proper forum to litigate the constitutional effect of counsel's tactical choices during the course of trial. At stake in this case are the circumstances under which we elect to exercise our discretion under ORAP 5.45(1) and the precedent that our decision establishes. We have a choice: we can ignore the admonitions of the Supreme Court and our own precedents, in which we have applied the doctrine of plain error with circumspection, and expand the doctrine beyond the constraints of its underlying policies, or we can adhere to what is established law on the subject by refusing to exercise our discretion under the circumstances of this case. As for me, the choice is clear in light of the far-reaching consequences that an unwarranted expansion of the doctrine will have. Consequently, I dissent for the reasons expressed above.

Landau and Ortega, JJ., join in this dissent.