STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

WILLIAM KINNEY;
aka William Kenney;
aka William Kinney, III,
*Defendant-Appellant.*

Multnomah County Circuit Court
070733501, 100532040;
A146976 (Control), A146977, A146909

333 P3d 1129

Andrew D. Robinson, Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter

Gartlan, Chief Defender, Office of Public Defense Services. William Kinney III filed the supplemental brief *pro se*.

Douglas F. Zier, Senior Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Duncan, Presiding Judge, and Wollheim, Judge, and Schuman, Senior Judge.

WOLLHEIM, J.

## WOLLHEIM, J.

Defendant appeals his judgments of conviction in two cases that were consolidated for trial. In Multnomah County Case Number 070733501 (Case 1), he was convicted of one count of unlawful possession of cocaine, ORS 475.884, and one count of driving while suspended or revoked, ORS 811.182(3), and in Multnomah County Case Number 100532040 (Case 2), he was convicted of one count of driving while suspended or revoked, ORS 811.182(3). He raises four assignments of error. In his first two assignments of error, he argues that the trial court erred when it failed to allow the jury to determine whether the two counts for driving while suspended or revoked were Class B felonies under ORS 811.182.[1] In his third assignment of error, he argues that the court erred in denying his request to represent himself at trial,[2] and in his fourth assignment of error, he argues that the court erred in doubling his sanctions for summary contempt. We reverse and remand on the fourth assignment of error, and otherwise affirm.

Defendant's convictions in these cases arose from two separate incidents. The incident in Case 1 occurred in 2007. A police officer, in the course of investigating a noise complaint, found defendant asleep in the driver's seat of a van with the engine running and the keys in the ignition. The incident in Case 2 occurred in 2010 while defendant was driving a vehicle with two passengers. While defendant was stopped at an intersection, a police officer, sitting at a bus shelter at the intersection, recognized one of defendant's passengers as someone with multiple outstanding arrest

---

[1] Under the 2005 and 2007 versions of ORS 811.175 that were applicable at the time of defendant's respective offenses, driving while suspended is a Class A traffic violation, "except as otherwise provided in ORS 811.182." Under the 2005 and 2007 versions of ORS 811.182, driving while suspended or revoked becomes a Class B felony if, *inter alia*:

"the suspension or revocation resulted from any degree of murder, manslaughter, criminally negligent homicide or assault resulting from the operation of a motor vehicle[.]"

Because the 2005 and 2007 versions of ORS 811.182 are, for purposes of the issues in this case, identical, we refer to that statutory provision throughout the opinion as ORS 811.182.

[2] Defendant filed a *pro se* supplemental brief pertaining only to the denial of self-representation.

warrants. After observing defendant turn at the intersection without using his turn signal, the officer contacted other officers to stop defendant for the traffic violation. In both the 2007 and 2010 incidents, officers determined that defendant was driving while his license was revoked.

In his first two assignments of error, defendant argues that the court erred in entering two felony convictions for driving while suspended, pursuant to ORS 811.182(3). ORS 811.182(3) makes driving while suspended or revoked a felony if the suspension or revocation resulted from certain circumstances, one of which is "any degree of * * * assault from the operation of a motor vehicle." At trial, the court admitted two certified copies (one for each case) of defendant's driving record from Driver and Motor Vehicle Services Division of the Oregon Department of Transportation, which indicated that defendant, on November 8, 2002, had been convicted for assault with a motor vehicle and failure to perform the duties of a driver. The record also included evidence that defendant's license was already suspended for previous traffic violations, that his license was "still suspended" in connection with the November 8, 2002, assault conviction, and that his license was also revoked in connection with the November 8, 2002, failure to perform duties of a driver conviction. Prior to instructing the jury, the trial court had the following colloquy with the prosecutor and defense counsel:

"THE COURT: * * * I had a question, this is on the driving while suspended—this is driving while suspended on a felony level, what should the jury be asked to find?

"[THE PROSECUTOR]: [Defense counsel] and I discussed that, we both came to the conclusion that the felony is an issue for the Court to decide, so it doesn't really matter to me one way or the other. The title of the crime, it has already been announced, but they don't need to be asking additional questions about it.

"[DEFENSE COUNSEL]: I agree with [the prosecutor], I believe it's an issue of law, not of fact.

"THE COURT: Okay."

Consequently, the jury was not asked to make findings in either case about whether defendant's suspension or revocation constituted a Class B felony under ORS 811.182(3).

Defendant assigns error in both cases to the trial court's failure to have the jury make the findings regarding his suspension or revocation. He acknowledges that this argument was not preserved below and that defendant contributed to the ruling it now assigns as error. However, defendant argues that we must review this error. His argument is as follows: Because the basis of his revocation or suspension is an element of the crime for which he was convicted and he was, therefore, entitled to have a jury determine that element, under Article I, section 11, of the Oregon Constitution,[3] and the court's holding in *State v. Barber*, 343 Or 525, 530, 173 P3d 827 (2007), his waiver of a jury trial on that element must be by written waiver, and we have no discretion to ignore that waiver requirement. The state counters that, regardless of whether the basis for the suspension or revocation should have been tried to a jury, this case is distinguishable from *Barber*, because, unlike the defendant in *Barber*, defendant did receive a jury trial; thus, the concerns that underlie the court's holding in *Barber* do not apply to this case.

We agree with the state that *Barber* does not require us to consider the alleged error. In *Barber*, the defendant was tried by the court on stipulated facts, and the Oregon Supreme Court held that *the trial*, without a written waiver by defendant, violated the Article I, section 11, right to a jury trial. *Id.* at 530. This case is distinguishable. Here, defendant had received a jury trial for both cases. His argument on appeal is that, despite there being "sufficient evidence in the record" regarding the basis for his suspension, and despite defendant's express oral agreement to have the trial court decide that element, because defendant did not sign a written waiver of the right to have a jury determine that fact, we have no choice but to reverse and remand these cases in order for a jury to make that determination. We do not read *Barber* to require such a result. *See also State v. Engerseth*, 255 Or App 765, 770 n 6, 299 P3d 567, *rev den*, 353 Or 868 (2013) (rejecting the defendant's argument that the holding in *Barber* required the court to correct the trial court's

---

[3] Article I, section 11, provides, *inter alia*, that a defendant "may elect to waive trial by jury and consent to be tried by the judge of the court alone" if "such election * * * be in writing[.]"

error in accepting the defendant's stipulation to a sentence enhancement fact without first obtaining a written waiver of the right to a jury trial as required by ORS 136.773(1)).

Having determined that we are not required to consider those errors in the two consolidated cases, we decline to review them, because defendant invited the errors. Where an appellant is "'actively instrumental in bringing about' the error, * * * the appellant 'cannot be heard to complain, and the case ought not to be reversed because of it.'" *State v. Ferguson*, 201 Or App 261, 269, 119 P3d 794, *rev den*, 340 Or 34 (2005) (quoting *Anderson v. Oregon Railroad Co.*, 45 Or 211, 217, 77 P 119 (1904)). The doctrine of invited error "usually is invoked when a party has invited the trial court to rule in a particular way, under circumstances that suggest that the party will be bound by the ruling or at least will not later seek a reversal on the basis of it." *Ferguson*, 201 Or App at 270. In *State v. Gaynor*, 130 Or App 99, 880 P2d 947 (1994), *rev den*, 320 Or 508 (1995), and *State v. McEahern*, 126 Or App 201, 867 P2d 568 (1994), we declined to exercise our discretion where the party asserting error "had affirmatively misstated the law, and the trial courts had relied on those misstatements to take the actions that they did." *State v. Calvert*, 214 Or App 227, 235, 164 P3d 1169 (2007). This case is controlled by our holdings in *Gaynor* and *McEahern*. In this case, the trial court specifically asked defendant whether the basis of the revocation or suspension was a question of law for the court or a question of fact for the jury. Defendant answered, "I agree with [the prosecutor], I believe it's an issue of law, not of fact." Having specifically told the trial court that the issue was a question of law, defendant cannot now argue that the trial court's ruling was error.[4]

---

[4] Defendant also argues that our holding in *State v. Popp*, 118 Or App 508, 848 P2d 134 (1993), indicates that we will not rely on the invited error rule where the error involves an action for which the trial court lacks authority. Defendant, however, relies on the holding in *Barber* for his argument that the court lacked authority. In light of the fact that we have already concluded that the holding of *Barber* is inapposite to the facts of this case, we need not address defendant's reliance on *Popp* further.

Defendant also argues that he was entitled, under the Sixth Amendment, to have a jury make the finding regarding his suspension or revocation. However, defendant invited the error under either Article I, section 11, or the Sixth Amendment, and defendant makes no alternative argument for why the invited error should be treated differently under the Sixth Amendment. We therefore decline to reverse under either Article I, section 11, or the Sixth Amendment.

Defendant's third assignment of error pertains to the trial court's ruling that denied defendant's request to represent himself. The trial court made its ruling on the day of trial, but before the trial had begun. Prior to its ruling, the trial court had informed defendant multiple times that he needed to stop disrupting the proceedings. Those warnings occurred, among other instances, during a pretrial hearing on the day prior to trial, in which defendant had continually interrupted the proceedings and the trial court had warned defense counsel that if defendant did not stop the disruptions, defendant would not be able to be present in the courtroom at trial. Another instance occurred on the day of trial and prior to its commencement, in which defendant again interrupted the proceedings, telling the court, *inter alia*, that he did not want his attorney to represent him. The court, after a conversation with defendant about his disruptiveness and whether he wanted to proceed *pro se*, concluded that defendant was making a motion to proceed *pro se*, and denied that motion, making the following findings:

> "[THE COURT]: You have the right to [represent yourself] if you can do so without disrupting the process of the Court and intelligently. And I find you cannot act without disrupting the process of court or obeying the rules of procedure to perform in the courtroom."

Defendant argues that the trial court erred, because it should not have foreclosed his opportunity to represent himself before the trial had even begun. Defendant contends that, "[a] trial court may terminate self-representation for misconduct, but may not prevent self-representation in order to preempt courtroom disruption." We disagree. Defendant's right to self-representation is not absolute, *State v. Davis*, 110 Or App 358, 360, 822 P2d 736 (1991), and a trial court may deny that right "where dispensing with an attorney's services would disrupt the orderly conduct of trial." *State v. Verna*, 9 Or App 620, 627, 498 P2d 793 (1972); *see also Davis*, 110 Or App at 360. This court has never held that the trial court must wait until a defendant *has* disrupted a trial. On the contrary, this court has recognized that a trial court may deny self-representation on an "anticipated 'disrupt[ion of] the judicial process.'" *State v. Miller*, 254 Or App 514, 524, 295 P3d 158 (2013) (quoting *Davis*, 110 Or App at

360). In this case, the trial court made its findings on the day of trial, after having observed defendant's behavior on that day and the day before. The trial court did not err in denying defendant's request for self-representation prior to the trial's commencement.

Defendant's fourth assignment of error is that the trial court erred in imposing contempt sanctions. The state concedes the error and concedes that the error requires reversal and remand for imposition of sanctions. The facts are as follows. During the consolidated trial, defendant's disruptions led the trial court to cite defendant 12 times for contempt of court, pursuant to ORS 33.096.[5] At the sentencing hearing, the trial court imposed 10 days of jail and a $250 fine on each of the 12 citations. A Judgment of Contempt was entered on September 27, 2010, and listed both case numbers from defendant's consolidated cases, and provided, in part:

> "Based on defendant's repeated disruptions in open court during his jury trial * * *, the court finds defendant in contempt on twelve (12) separate contempts and imposes summary sanction per ORS 33.096.
>
> "Sanction imposed will be:
>
> "1)   On each contempt the court imposes 10 days in jail for a total of 120 days in jail. * * * Jail time is to be consecutive to the prison sentences in [Case 1 and Case 2].
>
> "2)   On each contempt the court imposes a fine of $250 for a total of $3,000."

On October 27, 2010, and without notice to defendant, the trial court entered separate judgments for each of the cases in the consolidated trial. Each judgment stated: "The Court finds defendant in contempt on twelve (12) separate contempts and imposes Summary Sanction per ORS 33.096." Each judgment then imposed the sanctions set forth in the Judgment of Contempt.

---

[5] ORS 33.096 provides:

"A court may summarily impose a sanction upon a person who commits a contempt of court in the immediate view and presence of the court. The sanction may be imposed for the purpose of preserving order in the court or protecting the authority and dignity of the court."

After defendant had filed his notice of appeal, and for reasons not pertinent to defendant's arguments on appeal, defendant filed a motion with the trial court, pursuant to ORS 138.083, to amend the judgments in both cases. The trial court amended the judgments as defendant requested and also inserted the following new language into the two separate judgments:

"The 12 consecutive summary contempt sanctions imposed on [Case 1] and the additional 12 consecutive summary contempt sanctions imposed on [Case 2] shall be served first. Contempt citations on [Case 1] are to run concurrently with contempt citations on [Case 2], for a total of 120 days served on the contempt citations."

(Capitalization altered.)

Defendant argues, and the state concedes, that the trial court's judgments and amended judgments doubled the number of contempt citations from the Judgment of Contempt, and that the trial court did so without giving defendant an opportunity to object.

The state concedes, and we agree, that the trial court's doubling of the contempt citations was error under ORS 33.096. The trial court's authority to impose sanctions under ORS 33.096 is limited to those instances occurring "in the immediate view and presence of the court." The Judgment of Contempt indicated that the trial court had found 12 instances of contempt under ORS 33.096. Consequently, it had no authority to issue subsequent judgments that effectively doubled the cited instances of contempt. The effect of the trial court's modifications increased defendant's contempt sanctions from 12 to 24. The trial court's modifications are substantive.

Punitive contempt citations reversed and remanded for reimposition of sanctions; otherwise affirmed.