Submitted January 27, affirmed December 9, 2015, petition for review allowed
May 18, 2016 (359 Or 527)
See later issue Oregon Reports

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

GREGORY LEON HIGHTOWER,
aka Gregory Leon Hightower, Sr.,
*Defendant-Appellant.*

Multnomah County Circuit Court
120632737; A154220

364 P3d 29

Peter Gartlan, Chief Defender, and Robin A. Jones, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Peenesh H. Shah, Assistant Attorney General, filed the brief for respondent.

Before Sercombe, Presiding Judge, and Hadlock, Judge, and Tookey, Judge.

SERCOMBE, P. J.

## SERCOMBE, P. J.

Following a jury trial, defendant was convicted of one count of encouraging child sexual abuse in the first degree, ORS 163.684; one count of sexual abuse in the second degree, ORS 163.425; four counts of promoting prostitution, ORS 167.012; and one count of compelling prostitution, ORS 167.017. On appeal from the resulting judgment, defendant raises three assignments of error. We reject without discussion defendant's first and second assignments of error, which relate to alleged vouching by police officers testifying at his trial. We write to address defendant's third assignment of error, in which he argues that the trial court violated his right to self-representation under Article I, section 11, of the Oregon Constitution[1] and the Sixth and Fourteenth Amendments to the United States Constitution[2] when it denied his midtrial request to represent himself *pro se*. As explained below, the trial court did not abuse its discretion in denying defendant's request, and we affirm.

The relevant facts are procedural. Defendant was charged with several crimes related to his involvement with prostitution and sex trafficking. Hanrahan was appointed to represent defendant, and they had a contentious relationship throughout the proceedings. Defendant moved for substitution of counsel three times, raising numerous complaints, but primarily challenging the quality of Hanrahan's pretrial investigation and his conduct of the trial.[3] Before trial, defendant asserted that Hanrahan failed to properly interview potential witnesses, failed to assure that they would

---

[1] Article I, section 11, provides, in part, "In all criminal prosecutions, the accused shall have the right * * * to be heard by himself and counsel."

[2] The Sixth Amendment provides, in part, "In all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defence." The Sixth Amendment protects the right to self-representation, *Faretta v. California*, 422 US 806, 833-34, 95 S Ct 2525, 45 L Ed 2d 562 (1975), and applies to the states through the Due Process Clause of the Fourteenth Amendment, *Gideon v. Wainwright*, 372 US 335, 342-45, 83 S Ct 792, 9 L Ed 2d 799 (1963).

[3] Additionally, defendant asserted that a member of Hanrahan's staff had "cussed out" defendant's brother on the phone; that Hanrahan had falsely claimed that defendant had signed a speedy trial waiver; that Hanrahan had encouraged defendant to lie on the stand; and that Hanrahan had a conflict of interest because another member of his firm had previously represented defendant's brother and another witness in the case.

be available for trial, and failed to investigate recantations by defendant's victims in letters they wrote to defendant while he was in jail. During the trial, defendant contended that Hanrahan did not make adequate use of inconsistent statements by the victims as impeachment evidence. The trial court denied the motions for substitution of counsel, concluding each time that defendant's complaints about Hanrahan's representation were disputes over trial strategy and did not provide a basis for removing Hanrahan and appointing a new attorney. The trial court compared defendant's complaints about Hanrahan's performance to "arguing with your doctor about where the incision is going to be[,]" explaining that it was counsel's job to decide "what evidence is put on or what questions are asked or what arguments are made[.]"

As the trial progressed, defendant repeatedly disrupted the proceedings. He interjected while the state's witnesses were testifying to contradict their statements, accuse them of lying, or "object" to their statements. The court repeatedly admonished defendant to refrain from interrupting, and, three times, it threatened to remove defendant from the courtroom if his disruptions continued. In spite of the court's warnings, defendant continued to disrupt the proceedings.

As Hanrahan cross-examined the state's final witness, defendant requested that he be allowed to represent himself *pro se*. Defendant explained that he wanted to "do this on [his] own" because Hanrahan had failed to elicit testimony from that witness, a detective, about inconsistent statements that two of the victims had made to the detective concerning defendant's use of a BB gun to shoot out the windows of a victim's father's house. The court explained that, at that point in the proceedings, it would not grant defendant's request, particularly given that defendant was making his request to put on evidence irrelevant to the issues in the trial:

"THE COURT: All right. Here's the thing, * * * I'm— you know, you don't change horses in the midstream. And even though you have a right in some sense under some circumstances to defend yourself, in the middle of a trial I'm not going there. So I'm not going to—

"[DEFENDANT]:   I can't do my own trial?

"THE COURT:   —reserve [*sic*] Mr. Hanrahan.

"[DEFENDANT]:   I can't—

"THE COURT:   Number two, as I've said to you several times, he gets to make the calls about what makes sense to ask about and what doesn't make sense about. And I'll say, number three, this is so not about the BB guns and the windows."

The court later added that "[t]here hasn't been * * * a single word said in this courtroom about somebody shooting out * * * windows." Although Hanrahan then argued that the court should grant defendant's request, the court denied the request:

"I understand you're asking at this point to get rid of Mr. Hanrahan and take over the defense of the case on your own. I'm denying you that right to do that. The Court of Appeals will have to sort out whether that's the right call or not, but that's the call I'm making."

After the state rested, defendant again complained to the court about Hanrahan, saying that he had lied to defendant, telling defendant that he would offer letters that defendant had written to one of the victims as evidence and then refusing to do so. Defendant then reiterated his request to proceed *pro se*, and the court denied the request. Hanrahan then explained that the defense's position was that "the right to proceed *pro se* is absolute, at least in the absence" of evidence that defendant "cannot proceed without disrupting this tribunal." Hanrahan further argued that "the only basis for disruption so far has been [defendant's] contentions with me, and if you remove me from the equation, then the disruptions are going to go away."

The court responded:

"Well, I'm not going to take you off the case. I'm not going to right in middle of the trial and change where we are. Certainly people have a right to represent themselves, but it doesn't start in the middle of the trial, or indeed at the beginning of the defense case."

Hanrahan again argued that the court was required to grant the motion, regardless of the fact that it was made midtrial:

"MR. HANRAHAN: When the request is made doesn't change the analysis the Court has to go through to decide if you're going to grant it, and again, in the absence of a finding that removing me would be disruptive, I think the Court has an absolute obligation to do so.

"THE COURT: Well, we'll have to disagree on that, then. I'm confident that despite Mr. Hightower's desires, he's not actually in a position to represent himself, so I'm going to deny that motion."

Later in the trial, after defendant interrupted Hanrahan's argument for a motion for judgment of acquittal, Hanrahan again asserted that defendant should be allowed to proceed *pro se*:

"Your Honor, I think this is a perfect example as to why you should grant his motion. Despite me making the same arguments to the Court just moments ago, my client continues to say—make the same arguments. I think that he would best be served if you allowed him to represent himself, and the disruptions to the Court would be significantly diminished if not completely eliminated."

The court again denied the motion. Hanrahan continued to represent defendant for the remainder of the trial, and defendant was ultimately convicted of the charges discussed above.

On appeal, defendant argues that, under Article I, section 11, the trial court erred as a matter of law because it denied his request without "articulat[ing] a legally permissible reason" for doing so. The state responds that the trial court's statements in denying the request include the "implicit conclusion" that granting the request would be disruptive. And, in light of the record in this case, the state urges us to conclude that the court did not abuse its discretion in denying defendant's motion.[4]

---

[4] Defendant also argues that the trial court violated his right to self-representation under the Sixth and Fourteenth Amendments. However, it appears that defendant did not articulate a Sixth Amendment argument in front of the trial court. Moreover, to the extent defendant's federal constitutional argument was sufficiently preserved, it lacks merit. As we explained in *State v. Fredinburg*, 257 Or App 473, 308 P3d 208, *rev den*, 354 Or 490 (2013),

"[f]ederal courts have broad discretion to deny an untimely self-representation request under the Sixth Amendment and generally have held that a request made during a trial is untimely:

Article I, section 11, protects the right of a criminal defendant to waive the right to counsel and proceed *pro se. State v. Miller*, 254 Or App 514, 523, 295 P3d 158 (2013); *State v. Verna*, 9 Or App 620, 624-25, 498 P2d 793 (1972). However, the right to self-representation is not unlimited. A trial court may not allow a defendant to proceed *pro se* without first determining that the defendant's decision to waive his or her right to counsel is "intelligent and understanding." *State v. Blanchard*, 236 Or App 472, 475, 236 P3d 845 (2010) (internal quotation marks omitted). Furthermore, a trial court may deny a self-representation request if it is unclear or equivocal or if granting the request will result in the "disruption of the orderly conduct of the trial." *Id.* at 476; *State v. Fredinburg*, 257 Or App 473, 482, 308 P3d 208, *rev den*, 354 Or 490 (2013) ("Even assuming that defendant's self-representation request was unequivocal, intelligent, and understanding, it was within the discretion of the trial court to deny the midtrial request if the court concluded that the timing of the change or other consequences of the self-representation would be disruptive of the orderly conduct of the trial in a way that would be unreasonable under the circumstances.").

Defendant argues that the trial court erred in denying his request to represent himself because it did not find, on the record, that granting the request would be disruptive. Because we understand the trial court's order to have included an implicit finding that granting defendant's request would have been disruptive to the orderly progress of the trial, we reject defendant's contention. *See Fredinburg*, 257 Or App at 484 (the trial court's statement that "'[w]e are not going to stop the trial'" included "the implicit conclusion

---

"*Faretta*[, 422 US at 807,] stressed that the request [for self-representation] in that case was made "well before the date of trial." This suggests that, at some point, a request might be so disruptive of the orderly schedule of proceedings as to justify rejection on that ground alone. Provided [the] defendant does not demand additional time to prepare, lower courts generally deem pro se motions to be timely as long as they are made before trial. On the other hand, the trial court is recognized as having broad discretion to reject as untimely a request made during the course of the trial.'"

257 Or App at 481 n 3 (quoting Wayne R. LaFave, *et al.*, 3 *Criminal Procedure* § 11.5(d), 753-54 (3d ed 2007) (brackets in original; footnotes omitted)).

that defendant's request would likely be disruptive because it would delay the progress of the trial").

In response to defendant's initial request, the court stated that it would not allow defendant to "change horses in the midstream. And even though [defendant] ha[s] a right in some sense under some circumstances to defend [himself], in the middle of a trial I'm not going there." In response to defendant's reiteration of his request, the court explained that it would not take Hanrahan off the case because it was "not going to right in the middle of trial change where we are. Certainly people have a right to represent themselves, but it doesn't start in the middle of the trial, or indeed at the beginning of the defense case." Further, at that point in the trial, the trial court had already threatened to remove defendant from the courtroom three times as a result of defendant's disruptive behavior. Thus, it is apparent that the court's overriding concern was that granting defendant's self-representation request in the middle of trial would have disrupted the orderly conduct of the proceedings. *Compare id.* at 482 (trial court could properly deny self-representation request if granting "would be disruptive of the orderly conduct of the trial in a way that would be unreasonable under the circumstances"), *with Miller*, 254 Or App at 524 (trial court erred when it denied the defendant's request to represent himself "*solely* because it was in his 'best interest' to continue to be represented" by counsel and did not rely on "any anticipated disruption of the judicial process" (emphasis in original; internal quotation marks and brackets omitted)).

Furthermore, the trial court's concerns were supported by the record. *See, e.g., Fredinburg*, 257 Or App at 484 (trial court did not abuse its discretion where the record substantiated the trial court's implicit conclusion that allowing the defendant to represent himself would have disrupted the trial by causing delay because the defendant's request to represent himself was "coupled with and contingent upon *** a continuance of the trial").

First, the record demonstrates that defendant persistently interrupted the trial before asking to proceed *pro se.* Moreover, defendant ignored the trial court's repeated

commands that he refrain from interrupting, including three instances where the court threatened to remove him from the courtroom. *Cf. State v. Kinney*, 264 Or App 612, 618-19, 333 P3d 1129, *rev den*, 356 Or 517 (2014), *cert den*, ___ US ___, 135 S Ct 1856 (2015) (concluding that the trial court permissibly denied the defendant's pretrial self-representation request after "observ[ing] defendant's [disruptive] behavior on that day and the day before" and that the court did not have to grant the motion and wait for the defendant to disrupt the trial before denying his right to self-representation).

Additionally, when defendant first moved to represent himself, the state had nearly finished putting on its case, and Hanrahan was in the middle of cross-examining the state's final witness. Defendant's stated reason for representing himself was to introduce testimony about conflicting victim statements about defendant shooting out a victim's father's windows. The trial court concluded that that evidence was irrelevant, stating "this is so not about BB guns and windows" and that "[t]here hasn't been * * * a single word said in this courtroom about somebody shooting out * * * windows." Then, defendant reiterated his motion after the state rested and Hanrahan was preparing to put on the defense case. Substituting defendant for Hanrahan, so late in the trial, in order to allow defendant to put on irrelevant evidence, would likely have confused the jury and created a potential for delay—particularly given the probability that defendant would have continued to be disruptive if allowed to represent himself.

Thus, the record supports the trial court's implicit conclusion that permitting defendant to represent himself would have been disruptive of the orderly conduct of the trial. Therefore, the court did not abuse its discretion in denying defendant's self-representation request.

Affirmed.